# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DONALD E. CLARK and STACY L. CLARK,**

        **Plaintiffs,**

**v.**                                                **Case No:   6:18-cv-780-Orl-37KRS**

**ROCKHILL INSURANCE COMPANY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR DECLARATORY RELIEF FOR FAILURE TO STATE A CAUSE OF ACTION (Doc. No. 33)**
>
> **FILED:** **August 7, 2018**

### I. BACKGROUND.

Plaintiffs, Donald E. Clark and Stacy L. Clark, filed their second amended complaint against Defendant, Rockhill Insurance Company ("Rockhill"), on July 3, 2018. Doc. No. 26.[1] In their

---

[1] This case was originally filed in state court. In the original complaint Donald E. Clark was the only plaintiff. Doc. No. 4, at 4-6 (CM/ECF page numbers). In its notice of removal, Rockhill asserted that the amount in controversy exceeded $75,000.00, exclusive of interest, attorneys' fees, and costs. Doc. No. 1 ¶ 2. It alleged that Mr. Clark was domiciled in Brevard County, Florida, and, thus, a citizen of Florida for diversity purposes. Doc. No. 1 ¶ 3. It also asserted that it was an Arizona corporation with its principal place of business in Missouri, thereby making it a citizen of Arizona and Missouri for diversity purposes. *Id.* ¶ 5. Thus, Rockhill's notice of removal adequately established that the Court had subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332. After removal, Mr. Clark filed an amended complaint. Doc. No. 12. Rockhill moved to dismiss the amended complaint for failure to name an indispensable party under Federal Rule of Civil Procedure 12(b)(7), arguing that Mr. Clark's wife, Stacy L.

second amended complaint, they allege that Rockhill issued a policy to insure their property (The Sandman Motel). *Id.* ¶¶ 6-7. They allege that, during the policy's effective period, the property sustained water damage that was caused by the property's failed plumbing system. *Id.* ¶¶ 9, 16. They allege that they notified Rockhill of the damage, but that Rockhill wrongfully denied their claim and failed to pay for all of their losses, thereby breaching the parties' contract. *Id.* ¶¶ 9-20, 23. They demand judgment for "all losses with interest on any overdue payments, any incidental and foreseeable consequential damages caused by Defendant's breach of contract, plus attorneys' fees and costs." *Id.* at 4. They attached a copy of the insurance policy (Doc. No. 26-1) and a copy of Rockhill's denial letter (Doc. No. 26-2) to the second amended complaint.

Rockhill answered the Clarks' second amended complaint on July 17, 2018. Doc. No. 29. It asserted twelve (12) affirmative defenses including: (1) the loss was not covered because it was not fortuitous (*id.* at 8); (2) Plaintiffs did not provide timely notice of the loss as required by the

---

Clark, should have been named as a plaintiff. In the alternative, Rockhill argued that Mrs. Clark should be joined as a party under Rule 19. Doc. No. 20. The Court granted the alternative motion to join Mrs. Clark and gave Mr. Clark leave to file a second amended complaint naming Mrs. Clark as a plaintiff. Doc. No. 23. The second amended complaint alleges that Mrs. Clark resides in Brevard County, Florida, but not does not allege the location of her domicile or allege that she is a Florida citizen. Doc. No. 26 ¶ 5. Rockhill filed a counterclaim, but it also alleged only Mrs. Clark's residence and not her place of domicile or citizenship. Doc. No. 29, at 10. Generally, allegations of residence are not sufficient to establish citizenship for purposes of diversity jurisdiction; instead, citizenship is the key fact that must be alleged and, for individuals, citizenship is equivalent to the place of domicile. *See Travaglio v. Am. Express Corp.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (citations omitted). Thus, the record does not clearly disclose Mrs. Clark's citizenship. If she is a citizen of Arizona or Missouri—as is Rockhill—then there would not be complete diversity of citizenship, and the Court may no longer have subject matter jurisdiction over the case. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005) (suggesting that addition of non-diverse plaintiff under Rule 19 would destroy diversity jurisdiction); *Barragan v. Gen. Motors LLC*, 112 F. Supp. 3d 544, 549-553 (W.D. Tex. 2015) (denying motion for permissive joinder of non-diverse plaintiff because it would destroy complete diversity of citizenship). *See also* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) . . . over claims by persons proposed to be joined as plaintiffs under Rule 19 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."). If the Court concludes that there is doubt as to whether it may continue to exercise jurisdiction over this case, it may request evidence as to Mrs. Clark's citizenship. *See, e.g.*, *Travaglio*, 735 F.3d at 1270 (allowing defective allegations of citizenship to be cured by record evidence).

policy (*id.* at 4); (3) the loss was not covered because it commenced prior to the effective date of the policy (*id.* at 8); (4) all or part of the damage was excluded because the Clarks failed to protect the property from further loss (*id.* at 7-8); (5) the policy does not provide coverage for any repairs to property that did not sustain a direct physical loss or damage (*id.* at 5); and (6) all or part of the claimed damage was excluded by various provisions of the policy, including the Continuous or Repeated Seepage Exclusion; the Faulty, Inadequate or Defective Maintenance Exclusion; the Wear and Tear Exclusion; the exclusion for underground pipes, flues or drains; and the Water Exclusion (*id.* at 5-9). It also asserted a counterclaim against the Clarks, requesting a declaratory judgment that no payments are due to the Clarks under the policy. *Id.* at 10-18.[2] Rockhill attached a certified copy of the insurance policy to its counterclaim. Doc. No. 29-1.

The Clarks moved to dismiss Rockhill's counterclaim, arguing that the counterclaim fails to state a claim upon which relief can be granted. Doc. No. 33. Rockhill filed a response in opposition. Doc. No. 38. The Clarks also moved to strike three of Rockhill's affirmative defenses. Doc. No. 34. I denied the Clarks' motion to strike the Eighth and Eleventh Affirmative Defenses and granted Rockhill's request to amend its Twelfth Affirmative Defense, thereby mooting the Clarks' request to strike that defense. Doc. No. 39. I required Rockhill to file an amended answer, affirmative defenses, and counterclaim that amended only its Twelfth Affirmative Defense. *Id.* at 5. Rockhill filed its amended answer, affirmative defenses, and counterclaim on September 19, 2018.

---

[2] The counterclaim does not include any jurisdictional allegations. However, Rockhill has submitted evidence establishing that, at the time of removal, Mr. Clark was seeking in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs, in his breach of contract claim against Rockhill. Doc. No. 1-2. Thus, Rockhill's declaratory judgment action meets the amount-in-controversy requirement of § 1332. *See Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."). Therefore, if the Court is satisfied that the parties are completely diverse, *see supra* note 1, it has original jurisdiction over the counterclaim.

Doc. No. 40. In the amended document, Rockhill made no changes to the counterclaim. Thus, the Clarks' motion to dismiss the counterclaim was not mooted by the filing of the amended document.

The Clarks' motion to dismiss has been referred to me, and it is now ripe for review. In this Report and Recommendation, I cite to the original iteration of Rockhill's counterclaim (Doc. No. 29), but the discussion applies equally to the counterclaim as it appears in the amended answer, affirmative defenses, and counterclaim (Doc. No. 40).

## II.   LEGAL STANDARD.

The Clarks move to dismiss Rockhill's counterclaim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Although a court must accept as true well-pled allegations, it is not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678.

## III.   FACTS ALLEGED IN THE COUNTERCLAIM.

The Clarks are the owners of a property located at 3810 Highway 1, Mims, Florida (the "Mims Property"). Doc. No. 29, at 10. They also are the owners of the fictitious name, The Sandman Motel. *Id.* at 11. Rockhill issued a policy to The Sandman Motel providing coverage for the Mims Property. *Id.*; Doc. No. 29-1. The policy was effective from June 30, 2016 through June 30, 2017. Doc. No. 29, at 11. On or about June 29, 2017, Rockhill was provided with notice of a water backup loss that allegedly occurred on June 29, 2017, at the Mims Property. *Id.* at 12.

Rockhill immediately investigated the loss. *Id.* It determined that the reported loss was not covered under the policy. *Id.*

Rockhill maintains that the policy does not provide coverage for the loss and that it is not responsible under the policy for the loss. *Id.* First, Rockhill alleges that the loss is not covered because it was not fortuitous and the policy provides coverage only for fortuitous losses. *Id.* at 13. Second, it alleges that the reported loss is barred because the Clarks breached the policy by failing to provide timely notice of the loss as required by the terms of the policy. *Id.* It alleges that the loss occurred seven to ten months before notice was provided on June 29, 2017, and that notice was not provided until after repairs had commenced and/or been completed, thereby depriving Rockhill of a meaningful inspection and investigation of the loss. *Id.* Third, Rockhill alleges that the reported loss is not covered because it commenced prior to the effective date of the policy. *Id.* at 14. Fourth, Rockhill alleges that all or part of the reported loss is excluded because the Clarks failed to protect the Mims Property from further loss in violation of the clear and unambiguous terms of the policy. *Id.* Fifth, Rockhill alleges that, under the terms of the policy, any repairs to the property that did not sustain a direct physical loss or damage are not covered. *Id.* at 15. Finally, Rockhill contends that all or part of the reported loss is excluded and/or limited by various policy exclusions, including the Continuous or Repeated Seepage Exclusion; the Faulty, Inadequate or Defective Maintenance Exclusion; the Wear and Tear Exclusion; the exclusion for underground pipes, flues or drains; and the Water Exclusion. *Id.* at 15-17.

The Clarks, however, maintain that Rockhill is responsible under the policy for the reported loss. *Id.* at 12. Rockhill maintains that their position is incorrect. *Id.* at 13.

Based on these facts, Rockhill contends that an actual controversy exists between the Clarks and Rockhill as to whether the Clarks are entitled to insurance proceeds under the policy. *Id.* at 12.

It contends that it is in doubt as to its rights and obligations under the policy. *Id.* at 11. Thus, it "requests this Honorable Court to enter a judicial determination of the rights, duties, and obligations of the parties under the Policy, and prays for a judgment in its favor specifically declaring that no payments are owed to Donald E. Clark and Stacy L. Clark for the Reported Loss under the Policy, and any other relief this Court deems just and proper." *Id.* at 17-18.

**IV.   DISCUSSION.**

The Clarks move to dismiss Rockhill's counterclaim under Rule 12(b)(6). As an initial matter, I note that, in its counterclaim, Rockhill does not specify whether it is intending to proceed under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, or Florida's Declaratory Judgment Act, Fla. Stat. § 86.011, *et seq*. In this diversity case, the Court must apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Florida's Declaratory Judgment Act is procedural and does not confer any substantive rights. *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880 (11th Cir. 2016) (cited as persuasive authority). Thus, the Court should construe Rockhill's counterclaim as if it were asserted under the federal Declaratory Judgment Act and apply federal law. *See id.* (district court did not err in construing a declaratory judgment brought under both the federal and state declaratory judgment acts as if it had been brought exclusively under the federal statute).

The federal Declaratory Judgment Act grants federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "An essential element for a declaratory judgment action is the existence of an 'actual controversy' between the parties, a term which holds the same meaning as the cases and controversies requirement of Article III to the United States Constitution." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294,

1302 (M.D. Fla. 2015) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937)).  A court therefore must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic."  *Blitz*, 151 F. Supp. 3d at 1302 (citations omitted).  However, a claim for declaratory judgment should be permitted "to proceed where declaratory relief would (1) serve a useful purpose in clarifying and settling the legal relations in issue, and (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Traturyk v. Western-Southern Life Assurance Co.*, 6:15-cv-1347-Orl-40TBS, 2016 WL 727546, at *3 (M.D. Fla. Feb. 24, 2016) (citations and internal quotation marks omitted).

The Clarks argue that Rockhill's counterclaim should be dismissed because it "fails to allege sufficient plausible facts to establish a justiciable controversy regarding interpretation of or ambiguities in the subject policy" (Doc. No. 33, at 5) and because the counterclaim "is merely a denial of liability and therefore serves no useful purposes as the relief sought could be obtained from [the Clarks'] breach of contract action already pending before this Court" (*id.* at 7).  I address each of these arguments, below.

   A. *Whether the Counterclaim Adequately Alleges a Justiciable Controversy.*

As explained above, under the federal Declaratory Judgment Act, there must be an "actual controversy" between the parties that is substantial, immediate, and not hypothetical.  Here, it can

hardly be denied that there is an "actual controversy" between the parties regarding the application of the insurance policy to the Clarks' June 29, 2017 claim for damage to the Mims Property. Indeed, the Clarks initiated this lawsuit to allege that Rockhill had breached the policy by denying their claim for insurance proceeds and to demand payment under the policy.  That is sufficient to establish the existence of an actual controversy for purposes of the Declaratory Judgment Act.  *See Amer. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 796-99 (11th Cir. 2011) (cited as persuasive authority) (actual controversy existed where insurer denied claim because of failure to provide timely notice, but insured continued to demand payment, even in the absence of a lawsuit by the insured).

Nonetheless, the Clarks argue that Rockhill's counterclaim should be dismissed because it "fails to allege sufficient plausible facts to establish a justiciable controversy regarding interpretation of or ambiguities in the subject policy." Doc. No. 33, at 5.  The Clarks' argument on this point is not entirely clear, but they appear to be arguing that Rockhill may request a declaratory judgment only if the parties disagree as to the meaning of a policy term or possibly if the parties disagree as to whether the policy is valid and enforceable; moreover, they appear to be arguing that Rockhill may not request a declaratory judgment if there is a factual dispute between the parties.  Because, in the Clarks' formulation, the parties do not disagree on the meaning of an ambiguous policy term but rather on the factual circumstances that led to the damage to the Mims Property, they contend that Rockhill's counterclaim for declaratory judgment must be dismissed. *See id.* at 6 (internal citations omitted) ("Defendant's Counterclaim should be dismissed as Defendant does not seek a declaration that any portion of the subject insurance policy is illusory or ambiguous.  Nor does the Defendant ask for a declaration that the policy is valid and enforceable.  It does not appear from the face of the pleadings that any specific *language* from the policy is

presently in dispute between the parties. Instead, the dispute appears to be purely factual in nature . . . .").

At this early stage of the proceedings, and on the face of the counterclaim, is not entirely clear that this case consists only of factual disputes and will not require the Court to construe the language of the policy. Regardless, the Clarks cite no authority for their argument[3], and it is foreclosed by governing law. As explained by Judge Conway, citing to precedent from the Supreme Court of the United States:

> A court may issue a declaratory judgment under the Declaratory Judgment Act based on a dispute that turns on a question of fact. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242–243 (1937) (a dispute between insurer and insured was appropriate for judicial determination under the Declaratory Judgment Act even though the dispute over the parties' obligations under the insurance policy turned upon factual question of insured's disability level). The Court is thus authorized under the Declaratory Judgment Act to issue declaratory judgments regarding obligations to defend and provide coverage for indemnity under insurance policies, even when it is necessary to decide issues of fact in order to determine the declaratory judgment. *See id.* at 242. ("The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences.").

*Daytona Beach Riverhouse, Inc. v. Chubb Custom Ins. Co*., No. 6:13-cv-1461-Orl-22GJK, 2014 WL 12611320, at *3 (M.D. Fla. Mar. 20, 2014). Thus, the fact that Rockhill's counterclaim may

---

[3] The Clarks cite to one case for the proposition that there will be no occasion for a court to construe policy language if it is plain and unambiguous, *see* Doc. No. 33 at 6 (citing *Rigel v. Nat'l Cas. Co.*, 76 So. 2d 285, 286 (Fla. 1954)), and another case for the proposition that clear and unambiguous insurance policy provisions will be accorded their plain meaning and enforced as written, *id.* (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)). Neither case forbids a declaratory judgment action under federal law in the absence of an ambiguous policy provision or in a case that requires resolution of factual disputes. It is possible that the Clarks are referring, without citation, to certain cases construing the *Florida* Declaratory Judgment Act, which have concluded that declaratory relief is unavailable to settle questions concerning a clear and unambiguous contract. *See, e.g.*, *Tobon v. Am. Sec. Ins. Co.*, No. 06-61912-CIV, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007). As explained above (and as the Clarks recognize in their motion), however, this Court should apply federal law, not state law in examining Rockhill's declaratory judgment claim. Moreover, even if Florida law did apply, in *Higgins v. State Farm Fire & Casualty Co.*, 894 So. 2d 5, 10-15 (Fla. 2004), the Florida Supreme Court made it clear that a declaratory relief action may proceed based on an unambiguous insurance policy even if the court must determine the existence or nonexistence of a fact to determine the insurer's responsibility.

revolve around questions of fact does not present a reason to dismiss it.

The Clarks make two other arguments in this section of their motion, both of which are equally unavailing. First, they argue that Rockhill's "position is merely a denial of liability as well as an incorrect application of the burden of proof in first-party property damage disputes as the insured does not have to prove the cause of loss, or that the cause of loss is covered because 'all risks' of loss are covered." Doc. No. 33, at 5. Again, they cite no authority that supports this proposition. [4] Regardless, it is not evident that Rockhill's counterclaim represents a "misapplication" of the burden of proof, and, as discussed below, its counterclaim is not merely a denial of liability—instead, it embodies a demand for affirmative relief.

Second, the Clarks argue that Rockhill's counterclaim is "'conditional or based upon the possibility of a factual situation that may never develop' because application of the various exclusions is entirely dependent upon the facts [Rockhill] will be required to prove in [the Clarks'] underlying claim for breach of contract." *Id.* at 7. This argument is meritless. Rockhill's counterclaim is not based upon the possibility of a factual situation that may never develop (such as an insurer seeking a declaratory judgment on its duty to indemnify an insured before the insured has been found liable). *Compare Mid-Continent Cas. Co. v. G.R. Constr. Mgmt., Inc.*, 278 F. Supp. 3d 1302, 1304-06 (M.D. Fla. 2017) (dismissing a declaratory judgment action filed by an insurer seeking a declaration that it had no duty to indemnify the insured-general contractor should the insured be found liable in a negligence lawsuit that had been filed by a homeowner against the insured; reasoning, "Because the state court case is ongoing, [the insurer] is concerned with a

---

[4] The Clarks cite two cases stating that, under Florida law, an "all risks" policy provides coverage for all losses not resulting from misconduct or fraud unless the policy specifically excludes the loss. Doc. No. 33, at 5-6. Neither case says that a counterclaim for declaratory judgment that is "merely a denial of liability" or that represents an "incorrect application of the burden of proof" should be dismissed under federal law.

potential future injury that is neither real nor immediate at this time."). It is based on a non-hypothetical set of facts—namely, the Clarks made a claim for water damage and Rockhill denied that claim, but the Clarks continue to contend that Rockhill should pay for the damage and have sued Rockhill for breach of contract, thereby exposing Rockhill to potential liability.

The Eleventh Circuit has held that a justiciable controversy exists when an insurer seeks a declaratory judgment after it denied a claim because the insured failed to provide timely notice, but the insured continued to demand payment, even though the insured had not yet filed a lawsuit. *Amer. Ins. Co.*, 430 F. App'x at 796-99 (cited as persuasive authority). Thus, Rockhill could have filed a declaratory judgment action even if the Clarks had not filed suit. The Clarks do not explain why the simultaneous pendency of the Clarks' breach of contract suit would convert Rockhill's declaratory judgment action from a justiciable controversy into a non-justiciable one and cite no authority to support such a proposition.[5] Accordingly, this reason for dismissal should be rejected by the Court.

### B. Whether the Counterclaim Warrants Dismissal Because it is Duplicative and Serves no Useful Purpose.

The Clarks also argue that Rockhill's declaratory judgment action is due to be dismissed because "the requested 'declarations' sought in the Counterclaim appear to simply mirror and are duplicative of the relief sought by [Rockhill] through its affirmative defenses to [the Clarks'] breach of contract claim." Doc. No. 33, at 10. Moreover, the Clarks contend that "[a] verdict in [their] breach of contract claim will necessarily resolve each of [Rockhill's] twelve affirmative defenses, and likewise render moot [Rockhill's] vague request for a declaration." *Id.* at 9. Thus, the Clarks

---

[5] The Clarks cite only one case, *Hunt v. Anderson*, 794 F. Supp. 1551 (M.D. Ala. 1991). That case is both factually and legally inapposite. Moreover, the *Hunt* court actually declined to dismiss the plaintiff's declaratory judgment claim, despite the fact that formal legal action had not yet been taken against him. *Id.* at 1554. Accordingly, the *Hunt* case does not support the Clarks' argument.

urge the Court to dismiss Rockhill's counterclaim. However, "motions to dismiss . . . under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid." *Wichael v. Wal-Mart Stores E., L.P.*, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct. 30, 2014) (citation omitted); *see also Blitz Telecom Consulting*, 151 F. Supp. 3d at 1303 (alteration in original) ("It is well-established that '[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." (quoting Fed. R. Civ. P. 57)).[6]

Despite this, the Clarks note that the decision to entertain a declaratory judgment claim is discretionary and argue that the Court should exercise its discretion and decline to entertain Rockhill's request for a declaratory judgment. Doc. No. 33, at 7-10. The Clarks are, of course, correct that district courts enjoy discretion in determining whether to entertain a declaratory judgment action. *See MedImmune, Inc.*, 549 U.S. at 136 (internal citation and quotation marks omitted) ("The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so."). Moreover, every declaratory judgment action must ultimately serve a useful purpose. *See Allstate Ins. Co. v. Emp'rs Liab. Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971) (citation omitted) ("The declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful

---

[6] I note that, unlike Rule 12(b)(6), Rule 12(f) does permit a court to "strike from a pleading . . . any *redundant*, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). However, "Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or 'time wasters,' and are regularly denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1309 (S.D. Fla. 2010) (internal quotation marks and citation omitted). The Clarks did not file their motion pursuant to Rule 12(f), but even if they had, I would not recommend that the Court strike Rockhill's counterclaim because it clearly bears a relation to the subject matter of this controversy and, as discussed below, will cause no prejudice to the Clarks.

purpose.").[7] When a counterclaim for declaratory relief brings into question issues that have already been presented by a plaintiff's complaint and the defendant's answer, some courts will dismiss the counterclaim as being duplicative or redundant. *See* 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1406 (3d ed.) (citations omitted); *Gratke v. Andersen Windows, Inc.*, 10–CV–963 (PJS/LIB), 2010 WL 5439763, at *2 (D. Minn. Dec. 8, 2010) (collecting cases). "This conclusion has not been widely accepted, however, because it ignores the possibility that it is very difficult to determine whether the declaratory-judgment counterclaim really is redundant prior to trial." 6 Wright, et al., *supra*, § 1406 (citations omitted). Moreover, even if the counterclaim is completely redundant, a court may still exercise its discretion by not dismissing the counterclaim. *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) (citing *Gratke*, 2010 WL 5439763, at *2).

Here, it is not clear that Rockhill's counterclaim for declaratory judgment is completely duplicative of its affirmative defenses. As Rockhill argues, success on its affirmative defenses will merely relieve it of liability from the Clarks' breach of contract claim. Its counterclaim, however, asks for an affirmative declaration that its interpretation of the policy is correct. Doc. No. 38, at 7-10. Even if Rockhill prevails against the Clarks on their breach of contract claim, it will not necessarily obtain such a positive declaration. *See, e.g.*, *Medmarc Cas. Ins. Co.*, 783 F. Supp. 2d at 1217 (declining to dismiss counterclaim for declaratory judgment in insurance action as redundant; quoting and adopting the rationale of *Procentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 556-57 (D.N.J. 2009)) ("In instances where the declaratory relief is based on contract interpretation, courts are reluctant to dismiss a counterclaim for declaratory relief as redundant even when it is a near 'mirror image' of the complaint because a 'ruling adverse

---

[7] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

to the plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically flow from that judgment that defendant's interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless [they] specifically requested one." (quoting *Univ. Patents, Inc. v. Kligman*, No. CIV. A. 89-3525, 891991 WL 165071 (E.D. Pa. 1991))).

While it is possible that the resolution of the Clarks' breach of contract claim will moot Rockhill's request for declaratory relief, it is too soon to know for certain whether that will occur. Thus, at this early stage of the case, it cannot be said that Rockhill's counterclaim serves "no useful purpose." *See* 6 Wright, et al., *supra*, § 1406 ("Thus, the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action."). Moreover, if Rockhill's counterclaim turns out to be completely duplicative of its affirmative defenses, as the Clarks argue, then the Clarks will suffer no prejudice and there is no harm in allowing the counterclaim to proceed alongside the Clarks' breach of contract claim. *See Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257-CIV, 2012 WL 5410609, at *5 (S.D. Fla. Nov. 6, 2012) ("If, as plaintiff argues, the counterclaims are truly repetitious, then plaintiff will not have to expend much time on any additional discovery or briefing." (quoting *U.S. Bank Nat'l Ass'n v. Alliant Energy Res., Inc.*, No. 09-cv-078-bbc, 2009 WL 1850813, at *3 (W.D. Wis. June 26, 2009))).

Accordingly, I recommend that the Court decline to dismiss Rockhill's counterclaim at this time. If it determines at a later point in the case that Rockhill's request for declaratory judgment is truly duplicative, is moot, or serves no useful purpose, the Court may dismiss it at that time.

## V. RECOMMENDATION.

For the reasons explained above, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Plaintiffs' Motion to Dismiss Defendant's Counterclaim for Declaratory Relief for Failure to State a Cause of Action (Doc. No. 33) and consider the counterclaim included in Rockhill's Amended Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint and Incorporated Counterclaim for Declaratory Relief (Doc. No. 40) as the operative counterclaim in this action.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 21, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy